**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| SUNEDISON, INC., *et al.,* | : | |
| Reorganized Debtors. | : | Case No. 16-10992 (DSJ) |
| | : | (Jointly Administered) |
| DRIVETRAIN, LLC, IN ITS CAPACITY AS TRUSTEE OF THE SUNEDISON LITIGATION TRUST, | : | Adv. Pro. No. 19-01110 (DSJ) |
| Plaintiff, | : | |
| – against – | : | |
| EXPEDITORS INTERNATIONAL, EXPEDITORS INTERNATIONAL INC., EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., AND EXPEDITORS INTERNATIONAL (UK) LTD., | : | |
| Defendants. | : | |

## DECISION RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**APPEARANCES:**

***BRESSLER, AMERY & ROSS, P.C.***

*Counsel for Defendants Expeditors International, Expeditors International Inc., Expeditors International of Washington, Inc., and Expeditors International (UK) Ltd.*

362 Broadway

Providence, RI 02909

Counsel for Defendants

By: Lisa Kresge

***COLE SCHOTZ P.C.***

*Counsel for Plaintiff Drivetrain, LLC, in its capacity as Trustee of the SunEdison Litigation Trust*

1325 Avenue of the Americas, 19th Floor

1

New York, New York 10019

By: Mark Tsukerman

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

The SunEdison Litigation Trust has brought this and other actions to recover alleged preferential transfers and/or fraudulent conveyances paid by the debtors prior to the bankruptcy filings. This decision concerns various payments made to a group of related defendants that provided delivery, warehousing, and similar services to debtors. The main issues raised by defendants' motion is whether the action is time-barred by virtue of a post-petition agreement to shorten the time to take certain actions, and whether the defendants hold valid security interests in the amounts they received, with the legal consequence that the payments they received are not subject to avoidance or recovery by the Trustee as a matter of law. The Trustee cross-moved for partial summary judgment solely on the question of the timeliness of its action.

For reasons described below, defendants' motion for summary judgment is denied and the Trustee's cross-motion is granted. The time-shortening agreement relied on by defendants is ineffective or inapplicable for multiple reasons, and, meanwhile, genuine disputes of material fact exist that preclude summary judgment on the question whether defendants held valid security interests that render them secured creditors from whom no preference or avoidance recovery could be allowed.

More specifically, before the Court is the contested motion (the "Expeditors Motion," Adv. Dkt.[1] 56) of Defendants Expeditors International of Washington, Inc. ("EIW") and

---

[1] "Adv. Dkt. #" refers to documents filed on the electronic docket of this adversary proceeding [19-01110].

Expeditors International (UK) Ltd. ("EI UK" and, collectively with EIW, "Expeditors"). The motion seeks summary judgment to dismiss the complaint filed by Drivetrain, LLC, in its capacity as Trustee ("Plaintiff" or "Trustee") of the SunEdison Litigation Trust ("Trust"). In support of its motion, the Defendant filed the following: (i) a statement of undisputed facts (the "Defendant's Statement of Undisputed Material Facts," Adv. Dkt. 57) and a response to Plaintiff's Statement of Undisputed Material Facts ("Defendant's Response SOMF," Adv. Dkt. 73); (ii) the declaration of Bradley S. Powell, Defendant's former Chief Financial Officer (the "Powell Decl.," Adv. Dkt. 58); (iii) the declaration of Joseph Markus, Defendant's Global Account Manager (the "Albert Decl.," Adv. Dkt. 59); (iv) the declaration of Bradley S. Powell, Defendant's Global Account Manager (the "Markus Decl.," Adv. Dkt. 60); (v) the declaration of Lisa M. Kresge, Counsel to Defendant (the "Kresge Decl.," Adv. Dkt. 61); (vi) the declaration of Tracey Hamman, Defendant's Director of Global Credit (the "Hamman Decl.," Adv. Dkt. 62) and a reply declaration of Tracey Hamman (the "Reply Hamman Decl.," Adv. Dkt. 73-3); (vii) a reply declaration of David H. Pikus, Defendant's Director of Global Credit (the "Pikus Decl.," Adv. Dkt. 73-4); (viii) a Reply Memorandum in Support of Defendant's Motion for Summary Judgement and Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment (Adv. Dkt. 74).

The Trustee opposes the motion and cross-moves for partial summary judgment striking Defendant's Time-Bar Defense (the "Plaintiff's Motion"). The Trustee filed the following supporting documents: (i) a statement of undisputed facts (the "Plaintiff's Statement of Undisputed Material Facts," Adv. Dkt. 67), and a response to Defendant's Statement of Undisputed Material Facts "Plaintiff's Response SOMF," Adv. Dkt. 68); (ii) the declaration of Alex Canale (the "Canale Decl.," Adv. Dkt. 69); (iii) the declaration of Cameron A. Welch,

3

counsel to Plaintiff (the "Welch Decl.," Adv. Dkt. 70); and (iv) a Reply Memorandum in Support of Plaintiff's Cross Motion for Summary Judgement as to Defendants' "Time-Bar Defense" (Adv. Dkt. 75).

As noted and for the reasons discussed below, Defendants' summary judgment motion is DENIED and the Trustee's cross-motion for partial summary judgment is GRANTED.

## BACKGROUND

### A. Main Bankruptcy Case

SunEdison, Inc., a renewable energy holding company, along with twenty-five affiliates, filed chapter 11 petitions on April 21, 2016.[2] This Court, on April 25, 2016, entered an order to jointly administer the Debtors' chapter 11 cases solely for procedural purposes. *See Order Granting Debtors' Motion for Order (I) Directing Joint Administration of the Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) and (II) Waiving Requirements of Bankruptcy Code Section 342(c)(1) and Bankruptcy Rule 2002(n),* Case No. 16-10992, Dkt. No. 66).[3] In July 2017, the Court confirmed the *Second Amended Joint Plan of Reorganization of SunEdison, inc. and Its Debtor Affiliates* (the "Plan") (Dkt. No. 3735). The Plan provided for the creation of the GUC/Litigation Trust and selected Drivetrain LLC to serve as the GUC/Litigation Trust Trustee. (Dkt. No. 3735 at 22).

### B. Adversary Proceeding

On April 7, 2019, the Trustee commenced this adversary proceeding against Expeditors, a global logistics company that provided transportation, distribution, and related services to Debtors. The Complaint seeks to recover alleged preferential transfers and fraudulent

---

[2] Additional affiliates subsequently filed chapter 11 cases.
[3] "Dkt. No. #" refers to documents filed on the electronic docket of the main case [16-10992].

conveyances made to Defendants on or after September 1, 2015, pursuant to sections 544, 548, and 550 of the Bankruptcy Code, and sections 273, 274, 275, 278 and 279 of the New York Debtor and Creditor Law. *See Complaint against Expeditors International, Expeditors International, Inc., Expeditors International of Washington, Inc., Expeditors International (UK) Ltd. (I) to Avoid and Recover Transfers Pursuant to 11 U.S.C. Sections 544, 547, 548 and 550 and NYDCL Sections 273, 274, 275, 278 and 279 and (II) Disallow Claims Pursuant to 11 U.S.C. Section 502(d), Adv. Dkt. 1*. The debtor entities that made the relevant transfers are: (a) MEMC Pasadena, Inc.; (b) NVT, LLC.; (c) NVT Licenses, LLC.; (d) PVT Solar, Inc. d/b/a EchoFirst Inc.; (e) Solaicx; (f) SunEdison, Inc. (formerly MEMC Electronic Materials); and (g) SunEdison Products Singapore Pte Ltd (collectively "Payor-debtors" or "Debtors").

Expeditors moved for summary judgment arguing that: (i) the Trustee's claims are time-barred under an agreement that they contend shortened the statutory limitations period; and (ii) alternatively, and independent of the time-bar defense, the Trustee's preference claim fails because the Defendants were fully secured on the Petition Date and the Transfer Dates. *See Expeditors' Mot., Adv. Dkt. 56.*

The Trustee opposes Expeditors' Motion, and in his cross-motion seeks partial summary judgment striking Expeditors' Time-Bar Defense. *See Trustee's Opp. and Cross Mot., Adv. Dkt. 66.*

## **JURISDICTION**

This Court has jurisdiction over this bankruptcy case and this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(E) because it concerns a request for the turnover of property of the estate (core

proceedings include "orders to turn over property of the estate"). This Court possesses the authority to enter a final judgment in a core proceeding "arising under title 11" consistent with Article III of the United States Constitution. *See Stern v. Marshall,* 564 U.S. 462, 474–75 (2011); *see also In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 674 (S.D.N.Y. 2011) (proceedings arise under title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code"). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### A. Summary Judgment Legal Standard

The Court "shall" grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056). "A fact is 'material' only if the fact has some affect on the outcome of the suit." *In re Gallagher v. Gordon,* No. 09-CV-6425-CJS, 2010 WL 1816643, at *3 (W.D.N.Y. May 3, 2010) (citing *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir. 1998). The burden is on the moving party to show that summary judgment is warranted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). In analyzing a motion for summary judgment, courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004). Summary judgment is generally unwarranted if a reasonable jury could return a verdict in favor of the non-moving party. *See Anderson,* 477 U.S. at 248.

### B. Time-Bar Defense

Defendants contend that the Trustee's claims are time-barred pursuant to a purported agreement, between the Defendants and Debtors, to shorten the period during which the Trustee can bring avoidance actions. In the main bankruptcy case, on April 26, 2016, the court entered

6

the *Interim Order Authorizing Payment of Prepetition Claims of Certain Lien Claimants and Confirming Administrative Expense Status for Certain Goods Delivered to Debtors Postpetition* (the "Interim Lien Claimants Order"). *See Dkt. No. 82*. Defendants argue that the order authorized Debtors to negotiate terms by which Defendants would continue to provide services. Their argument is based entirely on paragraph 4 of the Interim Lien Claimant's Order, which provides:

> The Debtors may, in their sole discretion, condition payment of any Lien Claimant on the written agreement of such Lien Claimant to continue supplying goods and services to the Debtors on the Agreed Terms.

*Interim Lien Claimants Order ¶ 4.*

Defendants assert that in an April 29, 2016 email exchange between the parties' counsel, Debtors and Defendants consented to shorten the Debtors' statutory limitations period as one of the "Agreed Terms." They specifically point to paragraph 5 of the email, which states:

> The Debtors agree that any challenge by the debtors to the validity, extent, perfection or priority of Expeditors' pre-petition claims or liens or any claim against Expeditors under Chapter 5 of the bankruptcy code must be made within 120 days after the date of this letter agreement. If no such challenge is made, the debtors stipulate that Expeditors' pre-petition claims are allowed as secured claims.

*See Powell Decl., Ex. A; Adv. Dkt. 58*.

The Trustee argues both that this agreement is unenforceable, and that it does not mean what Defendants say. First, the Trustee challenges the validity of the agreement, arguing that it does not constitute a transaction that is in the ordinary course of business and that, therefore, the Debtors were required to provide notice to creditors and obtain Court authorization to enter the agreement, neither of which occurred. Although Defendants point to paragraph 4 of the Interim Lien Claimants' Order, the Trustee argues that the order does not authorize the agreement because: (i) shortening the challenge period is not a type of trade terms that the order allowed;

7

(ii) the order forbade the Debtors from waiving their rights and claims under the Code or any other applicable law; and (iii) even though the order authorized entry into certain "trade terms," the April 29 email setting forth the parties' agreement addressed the challenge period under a subsection that concerned "adequate protection terms," not under a separate subsection that specifically addressed "post-petition trade terms." Additionally, the Trustee argues that even if the agreement was valid, it does not bar the Trustee's claims because it was written to only apply to the "Debtors" and not the Trustee, and because the agreement does not address avoidance actions, instead referring only to claims that would challenge the validity, extent, perfection or priority of Expeditors' pre-petition claims or liens.

The Court agrees with the Trustee that the claims are not time-barred.

1. *The Agreement on Which Defendants Rely Required – and Did Not Have – Court Approval*

Most fundamentally, and as does not appear to be disputed, an agreement surrendering recovery rights under Chapter 5 of the Bankruptcy Code is a non-ordinary-course agreement that, as such, required notice and Court approval. As is discussed below, the only potentially applicable order anyone has identified does not authorize the agreement, and includes two separate provisions that Defendants ignore and that specify that the order does not authorize the surrender of statutory rights, which Chapter 5 recovery rights assuredly are. And, as the parties do not dispute, unauthorized non-ordinary-course agreements are void. *See, e.g.*, *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562202, at *16 (Bankr. S.D.N.Y. Mar. 21, 2003) ("Absent notice and an opportunity for a hearing, non-ordinary course of business transactions are void.") (collecting cases).

8

Chapter 5 of the Bankruptcy Code establishes critical rights of the estate to recover assets of the estate for the benefit of creditors. The trustee's avoidance powers are essential statutory tools guarding against what Congress has long provided would be an unjust result of rewarding creditors whom a debtor chooses to pay earlier and in full, to the detriment of similarly situated but less fortunate creditors who go unpaid, and who have to settle for cents on the dollar. *See In re Perma Pac. Props.,* 983 F.2d 964, 968 (10th Cir. 1992) ("It is the ultimate aim of the preference law in the Bankruptcy Code to insure that all creditors receive an equal distribution from the available assets of the debtor.") (internal citation omitted); *In re F & S Cent. Mfg. Corp.,* 53 B.R. 842, 846 (Bankr. E.D.N.Y. 1985) ("The provision was enacted to promote the Code's policy of preserving a financially distressed debtor's estate so that the debtor's assets may be fairly distributed amongst all creditors, not merely those who are favored.").

The case law concerning whether an agreement is or is not entered in the ordinary course of business confirms that the surrender of such a critical right on behalf of a bankruptcy estate lies outside the ordinary course of a debtor's business.

The statutory backdrop is familiar. "Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions involving property of the estate within the ordinary course of business without notice or a hearing. However, where the transaction is outside the ordinary course of the debtor's business, the debtor may not 'use, sell, or lease' estate property until creditors and other interested parties are given notice of the proposed transaction and the opportunity for a hearing if they object." *In re Lavigne,* 114 F.3d 379, 384 (2d Cir. 1997) (citing 11 U.S.C. § 363(b)(1)). "The framework of section 363 is designed to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an

9

opportunity to be heard when transactions are not ordinary." *In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir. 1992) (internal citation omitted).

Since the Code does not define "ordinary," courts apply a two-part test – the vertical test and the horizontal test – to determine whether a transaction is "within the ordinary course of business." *See Enron Corp.,* 2003 WL 1562202, at *16. If the transaction fails either prong, it is considered a non-ordinary course of business. *In re Bridge Info. Sys., Inc.,* 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003).

Under the vertical test, the court inquires "whether the transaction imposes economic risks consistent with a hypothetical creditor's expectations measured from the time that the creditor chose to contract with this particular debtor." *Enron Corp.*, 2003 WL 1562202, at *17 (internal citation omitted). "The 'vertical dimension' focuses on the debtor's internal operations, comparing the debtor's prepetition business with its postpetition conduct." *U.S. ex rel. Harrison v. Est. of Deutscher,* 115 B.R. 592, 598 (M.D. Tenn. 1990). The test "analyzes whether interested parties would reasonably expect[] the particular debtor in possession to seek court approval before entering into the questioned transaction." *Bridge Info. Sys., Inc.,* 293 B.R. at 486 (citing *In re Crystal Apparel, Inc.,* 220 B.R. 816, 832 (Bankr. S.DN.Y. 1998)).

Meanwhile, the horizontal test calls for "an industry-wide comparative analysis of the debtor's business to other similar businesses and requires considering whether such other businesses would engage in the proposed transaction as ordinary business." *Enron Corp.,* 2003 WL 1562202, at *17. "[A] transaction occurs in the ordinary course when there is a showing that the transaction is the sort occurring in the day-to-day operation of the debtor's business, or businesses like it." *Est. of Deutscher,* 115 B.R. at 598.

Here, assuming without deciding that the email agreement means what Defendants contend, the agreement fails both tests. As for the vertical test, as articulated in *Crystal Apparel*, a reasonable creditor would not expect a debtor to enter an agreement of such consequential effect to the estate's assets, which in turn affects the creditor's potential recovery, without notice and court approval of the agreement in question. Indeed, as the Trustee rightly notes, in the DIP financing context where provisions shortening limitations periods are frequently included, federal bankruptcy rules require the debtor to explicitly disclose such provisions in a motion. *See* Fed. R. Bankr. P. 4001(c)(1)(B)(viii) (requiring disclosure of any provision that involves "a release, waiver, or limitation on a claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action"). That express requirement is born of a recognition that also applies here: Given the importance of a debtor's rights to assert avoidance actions (discussed above) and the meaningful impact of those actions or their waiver on creditors, the waiver of such rights is highly consequential, and interested parties would reasonably expect any such agreement to be the subject of notice and a request for Court approval before a debtor bound itself and its estate.

The emailed provision also fails the horizontal test. While Expeditors argue that shortening limitations period for affirmative claims is customary in the logistics industry, they do not account for constraints necessitated in the bankruptcy context, and by the Bankruptcy Code itself. As the court in *Crystal Apparel, Inc.* explained, even where a commercial term or practice is common outside the bankruptcy context, "that does not mandate the conclusion that [it] is in the ordinary course of business for a Chapter 11[] debtor. If that were so, nothing would seem to be out of the ordinary course of business in a chapter 11 case." *Crystal Apparel, Inc.*, 220 B.R. at 832. There, the court found that while it might, outside the bankruptcy context, be a common

11

practice for an employment agreement to provide for significant financial compensation if an employee's job is impacted by a change in control of the debtor, it "is inimical to the policies of the Bankruptcy Code to so prefer top management without notice to creditors." *Id.* at 832-33. Similarly, even assuming without finding that the kind of agreement at issue here is common practice in the logistics industry, it is not part of the ordinary day-to-day operations of a debtor, and it certainly is not aligned with the Bankruptcy Code's policy of ensuring the fair and similar treatment of all creditors. For these reasons, both tests have not been satisfied, and, thus, the agreement constitutes a transaction in the non-ordinary course of business that required court approval.

This conclusion next raises the question whether the Interim Liens Claimants Order provided the required Court authorization. As explained above and as Defendants emphasize, paragraph 4 of the order permitted Debtors, "in their sole discretion, [to] condition payment of any Lien Claimant on the written agreement of such Lien Claimant to continue supplying goods and services to the Debtors on the Agreed Terms." *Interim Lien Claimants Order ¶ 4.* Defendants argue that this provision authorized Debtors to enter the purported agreement memorialized in the April 29, 2016 email.

This argument, however, is undermined by a careful review of the interim order, which in two separate places expressly disclaims authorizing Debtors to waive statutory rights. Clearly, paragraph 4 of the order empowered the Debtors to make payments to the lien claimants in exchange for continued service based on terms agreed to by both parties. But Defendants' reading is too sweeping and ignores specific, contrary provisions of the same order. Specifically, paragraphs 7 and 11 of the order both bar Debtors from waiving statutory rights in the way that Defendants assert Debtors did here through the post-order email agreement.

12

Paragraph 7 of the interim order provides:

> Neither the Debtors nor any other party in interest concedes that any Liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Order are valid, *and notwithstanding anything herein, or any action that the Debtors may take in connection with the relief granted herein,* including but not limited to any payment by the Debtors in connection with any Lien Claim, *the Debtors do not waive any and all of their rights to challenge the extent, validity, perfection or possible avoidance of the related Liens and payments*.

Interim Lien Claimants Order ¶ 7 (emphasis added).

Put more plainly, paragraph 7 states that any action by Debtors under the order does not "waive" rights including to raise various statutory challenge to payments made by the Debtors. These include but are not limited to Chapter 5 preference and avoidance actions such as the adversary proceeding now before this Court.

Relatedly, paragraph 11 of the order provides:

> Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any claim against a Debtor; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to Bankruptcy Code section 365; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

Interim Lien Claimants Order ¶ 11.

Distilling this provision to what is most pertinent here, paragraph 11 says that no relief granted in the order (necessarily including paragraph 4 on which Defendants rely) and "any action pursuant to" the order "shall be deemed . . . a waiver of Debtors' rights under the Bankruptcy Code. . . ."

Both paragraph 7 and paragraph 11 thus explicitly establish that the order does not waive any statutory rights that Debtors otherwise would have, and that no action or agreement made

under the purported authority of the order could do so. This is fatal to Defendants' contention that the agreement on which their argument hangs was authorized by the order.

### 2. Defendants Likely Misconstrue the Agreement, Even If It Were Permissible

Although the lack of Court authorization for the provision on which Defendants rely is dispositive, their position also likely fails based on the composition and language of the April 29 email itself.

The email's introductory sentences explained the purpose of the enumerated points in the email, stating: "Expeditors and the Chapter 11 debtors have agreed to the following adequate protection terms for Expeditors and post-petition trade terms". *See Powell Decl., Ex. A; Adv. Dkt. 58.* That language is followed by seven enumerated paragraphs, of which only paragraph 3, which reads as a logically self-contained, freestanding provision, is expressly made incident to Debtors' authority under the Interim Lien Claimants Order to determine "Agreed Terms." Paragraph 5 – the email's separate paragraph that concerns the statutory limitations period – does not make any reference to the Interim Lien Claimants Order. Consequently, the reasonable reading is that paragraph 5 is not an agreement that the parties crafted on the authority of the Interim Lien Claimants Order. This understanding makes sense given the explicit provisions of paragraphs 7 and 11 of the order, which, as discussed above, explicitly provide that Debtors were not authorized to surrender statutory rights such as those arising under Chapter 5.

### 3. Defendants' Reliance on State Law in Non-Bankruptcy Contexts Is Misplaced

Defendants advance an alternate theory that the agreement (as they construe it) was authorized as a matter of New York state law. This contention lacks merit.

14

It is true that New York state law allows contracting parties to shorten the time to commence a civil action. NY CPLR § 201; *Krohn v. Felix Indus., Inc.,* 226 A.D.2d 506, 506, (1996) ("It is well settled that parties to a contract may agree to limit the period in which an action must be commenced to a shorter time than that otherwise provided by the applicable Statute of Limitations."). However, this general feature of New York law does not save Defendants' reading. First, paragraphs 7 and 11 of the order control by explicitly barring Debtor from surrendering statutory rights such as those arising under Chapter 5. Moreover, generally applicable state law of contract cannot, in a bankruptcy-specific case, override provisions of the Bankruptcy Code. Indeed, although Defendants cited three cases for the proposition that bankruptcy courts "enforce contractually shortened limitations periods that are valid under state law", *Expeditors Mot. at 9*, those cases are inapposite. The court in *In re Jewish Hosp. & Med. Ctr. of Brooklyn,* 90 B.R. 45, 46 (Bankr. E.D.N.Y. 1988) found that a post-petition agreement that was entered into with the *court and other parties' approval* was reasonable under state law. Meanwhile, *In re All Am. Semiconductor, Inc.,* 623 B.R. 643, 649 (Bankr. S.D. Fla. 2020) and *In re Glob. Indus. Techs., Inc.,* 333 B.R. 251, 259 (Bankr. W.D. Pa. 2005) did not involve post-petition agreements. Notably, Defendants could not, either in their briefs or at the hearing, cite any case where a bankruptcy court enforced a previously undisclosed post-petition agreement of a debtor to shorten the statutory limitations period. Adopting Defendants' position is unsupported by law, and would run roughshod over fundamental provisions of the Bankruptcy Code, including the requirement of Section 363 that non-ordinary-course agreements require notice and Court approval. *See Enron Corp.*, 2003 WL 1562202, at *16 ("Absent notice and an opportunity for a hearing, non-ordinary course of business transactions are void.") (collecting cases). Thus, even New York law makes clear that it would not support Defendants here, because New York

15

law recognizes that "[o]ne cannot logically find a contract void and still uphold a provision of the very same contract." *Chassman v. People Res.,* 151 Misc. 2d 525, 529, 573 N.Y.S.2d 589, 591 (Civ. Ct. 1991). Debtors' agreement with Expeditors thus either does not mean what Expeditors assert, or if the isolated provision did mean what Expeditors says, that agreement would be void and thus not support the defense they assert.

### 4.  *Defendants' Equitable Estoppel Argument Fails*

Defendants also argue that the Trustee is equitably estopped from challenging the purported agreement shortening the statutory limitations period because Expeditors relied on the Debtors' representation, which in turn led to Expeditors' continued services to Debtors and the release of certain liens. The Trustee responds that there was no factual misrepresentation, and Expeditors could not have reasonably relied on an invalid agreement. The Trustee further argues that there was no detrimental reliance, as "[d]efendants were paid, in full, on their prepetition claims and for all of their post-petition services …." *Trustee's Reply* at 8.

Equitable estoppel is a doctrine that "'is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.'" *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004) (quoting *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001)). It "is grounded in notions of fair dealing and good conscience and should be applied where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *In re Jiminez*, No. 98-4471 (JMP), 2008 WL 2026147, at *7 (Bankr. S.D.N.Y. May 9, 2008) (internal quotation and citations omitted); *see also In re Texaco Inc.*, 254 B.R. 536, 560 (Bankr. S.D.N.Y. 2000).  A party can be equitably estopped from asserting a position or entitlement if three

16

elements are present: (a) the party to be estopped made a misrepresentation of fact to the other party with reason to believe the representation would be relied on; (b) the other party reasonably relied on the representation to its detriment; and (c) the party to be estopped had actual or constructive notice of the true facts. *See Jiminez* 2008 WL 2026147, at *7; *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996). The party claiming estoppel must also establish that: (a) it lacked knowledge and the means of learning the truth of the facts in question; (b) that it relied on the conduct (or statement) of the party to be estopped; and (c) that it acted in a manner that showed a prejudicial change of its position. *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005).

These elements are not all present here. Expeditors could not have "justifiably" or "reasonably" relied on the notion that prepetition payments made during the preference period were immune from Chapter 5 preference actions because they had full knowledge or at least access to the interim order on which they now rely, and, as the preceding discussion shows, that order does not authorize Debtors to surrender statutory rights in the guise of "Agreed Terms" for the continued provision of services.

Expeditors' summary judgment motion as to the time-bar defense therefore is DENIED. The Trustee's cross-motion for summary judgment striking the defense is GRANTED.

### C. Lien Defense

Alternatively, Defendants seek summary judgment on the Trustee's preference claims on the theory that Expeditors was a fully secured creditor on account of carrier's liens (including maritime liens and replacement liens) and warehouse liens that Expeditors held "at all relevant

17

times." *See Expeditors Mot. at 9.* The Trustee did not cross-move on this portion of the motion, arguing merely that this issue presents a question for trial.

If Expeditors was fully secured, then the Trustee could not meet his burden (*see* 11 U.S.C. § 547(g)) to show that the transferee received more than it would have in a chapter 7 liquidation, and subsection (5) of § 547(b) of the Code thus could not be satisfied. [4]

The parties' dispute is centered around subsection (b)(5), meaning whether the Trustee can demonstrate that the transfers enabled Expeditors to receive more than they would have received in a Chapter 7 liquidation. "To satisfy [Section] 547(b)(5), the plaintiff must prove that the transferee received more as a result of the preference than if the preference was never paid, and instead, the transferee received a distribution on its claim in a hypothetical chapter 7 case." *In re Teligent, Inc.*, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008). "As a practical matter, this element is satisfied whenever the plaintiff shows that the creditor would receive less than 100% in a hypothetical chapter 7 distribution." *Id.* (internal citations omitted). It is well-settled that "'[u]nder §547(b)(5), a transfer to a fully secured creditor is immunized from preference attack because the creditor would have been paid in full in a hypothetical Chapter 7 liquidation by

---

[4] Section 547(b) of the Bankruptcy Code empowers a trustee to "avoid any transfer of an interest of the debtor in property" if the transfer was:

   (1)  to or for the benefit of a creditor;

   (2)   for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3)  made while the debtor was insolvent;

   (4)  made– A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

   (5)  that enables such creditor to receive more than such creditor would receive if –if such creditor at the time of such transfer was an insider; and (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

virtue of its realization on its collateral.'" *Gallagher* 2010 WL 1816643, at \*5 (quoting *In re 360nettworks (USA) Inc.*, 327 B.R. 187, 190 (Bankr. S.D.N.Y. 2005)).

Defendants argue that they were a fully secured creditor at "all relevant times." The relevant time for section 547(b)(5) liquidation test analysis is the petition date. The Supreme Court established the appropriate liquidation test in *Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 229 (1936). "In interpreting the preference provision of the former Bankruptcy Act, the Supreme Court observed that the preferential effect of the payment must be determined 'not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results' ….Thus, the Code § 547(b)(5) analysis is to be made as of the time the Debtor filed its bankruptcy petition." *In re CIS Corp.,* 195 B.R. 251, 262 (Bankr. S.D.N.Y. 1996) (quoting *Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 229 (Bankr. S.D.N.Y. 1936)).

As noted earlier, defendants' lien defense is premised on the contention that Expeditors held "carrier's liens, replacement liens, and specific and general warehouse liens on all goods in their possession". *Expeditors' Mot. at 16.* Uniform Commercial Code § 7-307 provides that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, …and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." U.C.C. § 7-307(a). Furthermore, "[i]t is settled law in the United States that a maritime lien can arise only by operation of law, regardless of any agreement between the parties." *In re World Imports, Ltd. Inc.,* 498 B.R. 58, 61 (Bankr. E.D. Pa. 2013) (citing *Newell v. Norton,* 70 U.S. 257, 262 (1865)

19

("Maritime liens are not established by the agreement of the parties.... They are consequences attached by law to certain contracts, and are independent of any agreement between the parties that such liens shall exist. They, too, are *stricti juris.*")).

As for a warehouse lien, Uniform Commercial Code §7-209 grants a warehouse an automatic possessory lien on specific goods stored by the warehouse. *See* U.C.C. § 7-209. The parties may, through an agreement, convert the specific lien to a general lien to cover other goods. *Id.*

As proof of the asserted liens, Defendants point to a number of agreements that governed "the transportation, customs brokerage, and warehouse and distribution services that Expeditors provided to the Payor-Debtors," namely: the Logistics Services Agreement as amended ("LSA"), Expeditors' General Terms and Conditions of Service, Credit Applications, and Customs Power of Attorney, Expeditors' Ocean Bill of Lading Terms and Conditions, Expeditors' Air Waybill Terms and Conditions, Expeditors Terms and Conditions for Shipments Transported by Truck, Expeditors' Distribution Terms and Conditions for Warehouse and Distribution Services. *See Expeditors' Mot. at 19-20 (citing Def.'s Stmt. of Facts ¶¶ 4 & 18).*

The Trustee challenges Defendants' lien defense, arguing that (a) Expeditors improperly relies on collateral owned or possessed by non-debtor third parties to substantiate the asserted liens; (b) Defendants failed to establish ownership, quantity and value of the alleged "warehouse collateral" and "in transit collateral" that purportedly backs the warehouse liens; and (c) there is no evidentiary support to substantiate the asserted replacement liens against NVT Licenses and SunEdison Products Singapore Pte Ltd., two of the Debtors.

1. *Analysis*

Summary judgment based on Defendants' lien defense would be improper because the Trustee has demonstrated the presence of a genuine dispute of material facts as to the ownership of the asserted collateral. The Hamman Declaration proffered by Defendants posits two categories of collateral: "Warehouse Collateral" which is "the goods for which Expeditors provided warehouse and distribution services (or, in the case of NVT Licenses, LLC, warehouse services)" and "In-Transit Collateral" which is "the goods for which Expeditors provided transportation services where the applicable Payor-Debtor was either shipper, consignee, or seller." *Hamman Decl. at 3*. The Trustee, however, argues that much of this asserted collateral is not owned by the estate, or, at least, that Defendants have not proved ownership.

Ownership of the collateral is undeniably a material fact. "A fact is 'material' only if the fact has some effect on the outcome of the suit." *Gallagher* 2010 WL 1816643, at *3 (citing *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir. 1998)). Expeditors' asserted status as a fully secured creditor cannot be substantiated without the collateral; by definition, a debtor's obligation to a creditor or a lienholder is secured only up to the value of the collateral to which the lien attaches. *See* 11 U.S.C. § 506(a) (1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.").

Although Expeditors insists that ownership of the goods/collateral is immaterial, this line of argument was rightly rejected by this Court in *In re Pameco Corp.*, 356 B.R. 327, 336–37 (Bankr. S.D.N.Y. 2006), and by the Fourth Circuit in *In re Virginia–Carolina Fin. Corp.*, 954 F.2d 193, 198 (4th Cir. 1992). As the latter court put it, "we cannot accept the contention that a

21

creditor's security interest in an asset of an entity not in bankruptcy, which 'fully collateralizes' a loan to the bankrupt, enables the creditor to elect to draw from the bankruptcy estate 100% of the debt owed, at the expense of the debtor's other creditors." *Virginia-Carolina Fin. Corp.,* 954 F.2d at 198. The appeals court further explained that "[w]hile the bankruptcy code recognizes and respects the preeminent status given to the secured creditor by state commercial codes, a creditor is 'secured' under the code only to the extent of the value of his interest in property of the estate." *Id.* (citing 11 U.S.C. § 506(a)); *see also Pameco Corp.,* 356 B.R. at 336–37.

Expeditors' reliance on *In re Sharon Steel Corp.,* 176 B.R. 384 (Bankr. W.D. Pa. 1995) to show otherwise is misguided. There, the court denied summary judgment because it could not determine the existence, validity, and extent of alleged carrier's and warehouse liens, but the court also held that if the liens were valid, they would have priority over a secured creditor. That case, however, concerned the priority of interests in a debtor's property. There was no dispute or discussion about the ownership of the property, and certainly not a grant of summary judgment determining a creditor to be fully secured based on property that the non-movant contended was not property of the estate.

Here, as explained in the Hamman Declaration, Expeditors "assigned" collateral to the debtors based on their status either as the consignee, shipper or seller for a particular transaction. The Trustee objects that this method of allocation was unreliable because it utilized inconsistent criteria, but even more fundamentally for bankruptcy-law purposes, Defendants' methodology skips over the necessary task of identifying the actual owner of the goods that Defendants deem to be collateral. The Trustee alleges that if the collateral is reassigned, it will result in a "material decrease" in Expeditors' asserted collateral. *Canale Decl. at 4.* Expeditors' method, the Trustee

22

further argues, also facilitated the allocation of the same collateral to multiple debtors, as described below:

> "[B]ased on our review thus far, the inconsistent criteria used in the Hamman Declaration Exhibits A and B appears to have caused the same in-transit inventory to be assigned to two different Payor-Debtors on at least two occasions: a. HBL 612630408 - Hamman Exhibit A applies different ownership criteria by entity: "Consignee" for NVT and "Shipper" for SPS. As a result, it appears that the same HBL was used to support in-transit inventory allocations for both NVT (as Consignee) and SPS (as Shipper), i.e., the same inventory appears to have been allocated twice. (See Reference Numbers 13 and 23 in Exhibit A). b. HBL 411293227 - Hamman Exhibits A and B apply different ownership criteria by entity: "Shipper" for SUNE and "Seller" for SPS. As a result, the same HBL was used to support in-transit inventory allocations for both SUNE (as Shipper) and SPS (as Seller), i.e., the same inventory appears to have been allocated twice. Despite Hamman indicating SPS was the "Seller," the relevant shipping records for this HBL identify SPS as "Consignee" and Flextronics as "Exporter." (See Reference Numbers 24 and 26 in Exhibit A)."

*Canale Decl. at 6.*

In another instance, the Trustee alleged that Expeditors' analysis failed to account for the transfer of warehouse inventory from one debtor entity, SPS, to another debtor entity, PVT Solar, despite an email correspondence from a SunEdison employee documenting the transfer, *Canale Decl. at 11*, to which Expeditors responded that the Trustee did "not identify any inaccuracies or omissions in the data from Expeditors' El Paso warehouse management system." *Reply Hamman Decl. at 3*. All of these taken together indicate the presence of material factual disputes as to the ownership of the collateral Expeditors relies on. While the Court agrees with Expeditors that the liens are against the goods, the ownership of the goods is a material fact that has not been established so as to permit summary judgment. *See Virginia–Carolina Fin. Corp.*, 954 F. 2d at 196-198. These issues alone give rise to a genuine dispute of material fact that precludes summary judgment.

23

There are other issues that also appear to require a trial. For example, as to the quantity and thus the value of the asserted collateral, the parties disagree about what key elements should be factored in the analysis. Defendants contend that the Trustee, for his Warehouse Collateral analysis, included irrelevant metrics "that have no bearing on the quantities of each item in storage for any Payor-Debtor" *Hamman Reply Dec. at 22,* and for the In-Transit Collateral analysis, the Trustee failed to "include all of the relevant information." *Hamman Reply Dec. at 24.* A dispute that centers around the underlying parameters to be used in a calculation is the kind of valuation or computational dispute that is appropriate for trial. *See Brown v. Progressive Mountain Ins. Co.,* 716 F. Supp. 3d 1349, 1355-56 (N.D. Ga. 2024) (denying summary judgment where "the parties disagree over the propriety of excluding certain numbers and what the numbers mean for purposes of the [calculation].").

In sum, whether the collateral attached to Expeditors' liens is owned by the Debtors is a relevant factor in determining whether the challenged transfers are avoidable under section 547(b) of the Code. Furthermore, there is a genuine dispute as to material facts such as the ownership and value of the collateral. Defendants' summary judgment motion on the question of the existence and value of liens securing their entitlements is therefore denied.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' summary judgment motion in its entirety, and GRANTS the Trustee's cross-motion for partial summary judgment on the issue of whether the applicable statute of limitation was validly shortened by agreement of the parties. The Trustee is to submit a proposed order effectuating this ruling on notice. The parties are to contact chambers to schedule a case management conference.

Dated: New York, New York
      July 31, 2026

                                  *s/ David S. Jones*
                            Honorable David S. Jones
                            United States Bankruptcy Judge

25